KANNE, Circuit Judge,
concurring.
I join in the majority’s reversal of the district court’s decision denying Davis’s motion for relief from final judgment and the majority’s remand for further proceedings. I write separately to briefly discuss certain factors.
When reviewing a district court’s denial of an indigent prisoner plaintiffs motion to recruit counsel for him, we make three inquiries: “(1) has the indigent plaintiff made reasonable efforts to retain counsel or been effectively precluded from making such efforts before requesting appointment; (2) given the difficulty of the case, did the plaintiff appear to be competent to try it himself; and (3) if not, would the presence of counsel have made a difference in the outcome.” Pruitt v. Mote, 503 F.3d 647, 654 (7th Cir. 2007) (en banc) (internal citations and quotations marks omitted).
Here, the district court erred at the mandatory first step by not crediting Davis for following existing precedent in attempting to obtain a lawyer to represent him. See Jackson v. Cty. of McLean, 953 F.2d 1070, 1073 (7th Cir. 1992). In fact, the defendant does not contest that Davis had contacted several lawyers seeking representation in this litigation.
Moreover, the long extended give-and-take between the district judge and the parties failed to get to the heart of the matter: whether the district court should have tried to appoint counsel for Davis. The court could have addressed this issue by appointing a magistrate judge to conduct a hearing at the prison. The magistrate judge could have considered both Davis’s efforts to obtain counsel and the difficulty Davis experienced in dealing with the case. In addition, but less satisfactorily, the district judge could have held a hearing by telephone to achieve the same end.
With counsel, Davis likely would not have missed the deadlines for written discovery. Thus, the outcome of the case in the district court would have been different.
I agree that, in this case, the district court should have tried to obtain counsel for Davis because of the totality of extraordinary circumstances. However, the use of Davis’s unverified (albeit undisputed) IQ score as a metric to determine his reading ability—and therefore, the need for legal representation—is problematic. Davis first claimed that his IQ score was under 73, and later that his IQ was only 66. Initially, as noted, the validity of Davis’s IQ is not supported by any proper validation. Furthermore, his claimed 6th-grade reading level and lack of communication skills were only unverified allegations.
In the general scheme of recruiting pro bono counsel, it is extremely significant that the number of inmates in prison with low IQs is substantial. See generally Brie Diamond, Robert G. Morris & J.C. Barnes, Individual and Group IQ Predict Inmate Violence, 40:2 Intelligence 115 (2012) (“[T]he literature suggests that IQ—at the individual and macro-level—is negatively correlated with crime....”).
If, therefore, an IQ score is routinely used to establish reading ability and thus a need for counsel, it should be based on valid testing. Indeed, the use of an IQ level will certainly result in a much larger number of prisoner cases being added to the dockets of district courts. Such an outcome would be contrary to the intent of Congress exhibited by enacting the Prison Litigation Reform Act, 42 U.S.C. § 1997e. See Woodford v. Ngo, 548 U.S. 81, 84, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) (noting that *754 Congress enacted the Prison Litigation Reform Act to reduce the quantity of the ever-increasing number of prisoner lawsuits).
Nevertheless, given the totality of applicable extraordinary circumstances, and specifically, because the district court did not credit Davis’s attempts to obtain legal representation, I agree that the final judgment must be reversed and the case remanded.